**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**ANDERSON DIVISION**

| | | |
|---|---|---|
| COUNTY OF ANDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RITE AID OF SOUTH CAROLINA, INC.; | ) | C.A. No. 8:18-cv-01947-BHH |
| PURDUE PHARMA L.P.; PURDUE PHARMA | ) | |
| INC.; THE PURDUE FREDERICK COMPANY, | ) | (Removal from: Court of Common |
| INC.; TEVA PHARMACEUTICALS USA, | ) | Pleas, Tenth Judicial Circuit, Case |
| INC.; CEPHALON, INC.; JOHNSON & | ) | No. 2018-CP-04-01108) |
| JOHNSON; JANSSEN PHARMACEUTICALS, | ) | |
| INC.; ORTHO-MCNEIL-JANSSEN | ) | |
| PHARMACEUTICALS, INC N/K/A JANSSEN | ) | |
| PHARMACEUTICALS, INC.; JANSSEN | ) | |
| PHARMACEUTICA, INC. N/K/A JANSSEN | ) | |
| PHARMACEUTICALS, INC.; ENDO HEALTH | ) | |
| SOLUTIONS INC.; ENDO | ) | |
| PHARMACEUTICALS, INC.; ALLERGAN | ) | |
| PLC F/K/A ACTAVIS PLC; ALLERGAN | ) | |
| FINANCE LLC F/K/A ACTAVIS, INC.; | ) | |
| WATSON LABORATORIES, INC.; ACTAVIS | ) | |
| LLC; ACTAVIS PHARMA, INC. F/K/A | ) | |
| WATSON PHARMA, INC.; INSYS | ) | |
| THERAPEUTICS, INC.; MCKESSON | ) | |
| CORPORATION; CARDINAL HEALTH, INC.; | ) | |
| AMERISOURCEBERGEN DRUG | ) | |
| CORPORATION; SMITH DRUG COMPANY; | ) | |
| WAL-MART STORES EAST, LP; WAL-MART | ) | |
| STORES, INC.; CVS PHARMACY, INC.; CVS | ) | |
| HEALTH CORPORATION; LEAVIS | ) | |
| SULLIVAN; BETH TAYLOR; LEIGH | ) | |
| VARNADORE; PAUL KITCHIN; | ) | |
| AATHIRAYEN THIYAGARAJA; SPINE AND | ) | |
| PAIN CONSULTANTS, PA; MACKIE | ) | |
| WALKER; JOHN DOE 1; JOHN DOE 2; JOHN | ) | |
| DOE 3; JOHN DOE 4; CLINIC 1; CLINIC 2; | ) | |
| CLINIC 3; CLINIC 4; and CLINIC 5, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT MCKESSON CORPORATION'S OPPOSITION TO PLAINTIFF'S**
**SUPPLEMENTAL MOTION TO REMAND AND MOTION FOR EXPEDITED RULING**

McKesson Corporation removed this action because the County of Anderson ("Plaintiff") asserts claims that McKesson and other distributors of prescription opioids (collectively, "Distributors") breached duties arising under the federal Controlled Substances Act, 21 U.S.C. § 801, *et seq.* (the "CSA"). Plaintiff moves to remand this case to state court for lack of subject matter jurisdiction even though its claims against Distributors are predicated on alleged violations of these federal duties. Plaintiff's reliance on duties arising under federal law creates federal question jurisdiction under 28 U.S.C. § 1331.

Although this Court need not ever and should not now reach the merits of Plaintiff's motion, federal jurisdiction is proper under the four-part test set forth in *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005), and *Gunn v. Minton*, 568 U.S. 251 (2013). Under that test, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.

Here, all four factors are present. *First*, the Complaint necessarily raises federal issues because Plaintiff bases its claims against Distributors on duties to report and halt "suspicious orders" for prescription opioids, which arise out of the federal CSA, and Plaintiff fails to cite state law authority setting forth a duty to report or halt suspicious orders. *Second*, the parties actually dispute the federal issues because they contest whether Distributors violated the CSA and the scope of duties arising under the CSA. *Third*, the federal issues are substantial given the federal interest in the CSA's nationwide regulatory scheme, which requires uniformity, and the federal government's asserted interest in the subject matter of this litigation. *Fourth*, and finally, federal jurisdiction will not upset any federal-state balance.

Although there is no basis to remand this action to state court, consideration of Plaintiff's remand motion should be deferred to allow the issue presented in that motion to be decided on a national basis, alongside almost identical claims brought by other plaintiffs across the country as part of the national opioid litigation that has been consolidated by the Judicial Panel on Multidistrict Litigation ("JPML") for pre-trial purposes in the United States District Court for the Northern District of Ohio (the "MDL").

## BACKGROUND[1]

### A.     Plaintiff's Action

Plaintiff filed this lawsuit in South Carolina state court on May 15.  DSC Dkt. No. 19 ¶ 1. Plaintiff's Complaint names four discrete sets of defendants: (i) pharmaceutical manufacturers, which make and promote opioid medications; (ii) Distributors, which are pharmaceutical wholesale distributors; and (iii) sales representatives, who marketed opioid medications; and (iv) pharmacies and doctors, who prescribed opioid medications. Dkt. No. 19 ¶¶ 3-7. As to the Distributors, the Complaint asserts causes of action against Distributors for deceptive and unfair acts and practices under the South Carolina Unfair Trade Practices Act (Count I), fraud (Count II), unjust enrichment (Count III), negligence (Count IV), negligent misrepresentation (Count V), public nuisance (Count VI), constructive fraud (Count VII), and negligence per se (Count VIII). DSC Dkt. No. 19 ¶ 9.

Plaintiff's central theory of liability against Distributors is that Distributors violated two duties aimed at preventing "diversion" of controlled substances: (1) a duty to report "suspicious orders" for controlled substances and (2) a duty to halt shipments of suspicious orders.

---

[1] "JPML Dkt." refers to the JPML's docket in *In re Nat'l Prescription Opiate Litig.*, No. 2804 (J.P.M.L.), and "DSC Dkt." refers to this Court's docket in *County of Anderson v. Rite Aid of South Carolina, Inc., et al.*, No. 8:18-cv-01947 (D.S.C.).

Specifically, Plaintiff's claims against Distributors rest on allegations that Distributors should have reported and refused to ship purportedly suspicious opioid orders from South Carolina pharmacies. *See, e.g.*, Compl. ¶ 318 (alleging that distributors "knew they were required to monitor, detect, and halt suspicious orders"); *id.* ¶ 326 (alleging that Distributors "breached their duty to monitor, detect, investigate, refuse, and report suspicious orders of prescription opiates").

The duties on which Plaintiff's claims rest—the duties to report or refuse to ship suspicious opioid orders—arise out of the federal CSA and related federal regulations. The reporting duty—*i.e.*, to implement effective controls to detect and report suspicious orders—is set forth in the CSA's implementing regulations. *See* 21 C.F.R. § 1301.74(b) (duty to monitor and report suspicious orders of controlled substances). The shipment-halting duty arises out of the Drug Enforcement Administration's ("DEA") interpretation of the CSA, under which Distributors must "decline to ship" suspicious orders for controlled substances. *See Masters Pharm., Inc. v. DEA*, 861 F.3d 206, 212-13 (D.C. Cir. 2017) (citing *In re Southwood Pharm., Inc.*, 72 Fed. Reg. 36,487, 36,500-501 (DEA July 3, 2007), as the source of DEA's "Shipping Requirement").

The Complaint therefore alleges that Distributors violated duties arising under the CSA and related DEA regulations. Indeed, Plaintiff appears to recognize the federal source of these duties by citing federal laws and regulations, federal court decisions, and DEA decisions to establish them. *See, e.g.*, Compl. ¶ 307 ("Federal regulations … impose a non-delegable duty upon wholesale drug distributors to 'design and operate a system to disclose to the registrant suspicious orders of controlled substances.'"); *id.* ¶¶ 309, 322 n.110, 338 (citing *Masters* as source of duty to "stop shipment" of suspicious orders); *id.* ¶¶ 306, 307, 308, 344, 532 (citing 21 C.F.R. § 1301.74(b) as source of duty to report suspicious orders). Although Plaintiff purports to

disavow exclusive reliance on federal law, Compl. ¶ 46, the Complaint fails to cite South Carolina law establishing duties to report or halt suspicious orders for prescription opioids.[2]

### B.  The Multidistrict Litigation

Not only does Plaintiff base its claims on federal law, but its claims are the same as those already being asserted in federal court by hundreds of other plaintiffs against opioid manufacturers, distributors, and pharmacies. To consolidate these cases for coordinated proceedings, the JPML formed an MDL in the Northern District of Ohio. JPML Dkt. No. 328. In total, more than 1,000 actions are pending in the MDL. As new cases are filed across the country each week, the JPML continues—and will continue—to transfer more actions to the MDL.

After this case was removed, a notice was filed with the JPML indicating that this case was appropriate for inclusion in the MDL, JPML Dkt. No. 2059, and on July 19, the JPML issued an order conditionally transferring the case to the MDL on the ground that it appears to "involve questions of fact that are common to the actions previously transferred to the [MDL]," JPML Dkt. No. 2060 (CTO-46) (attached as **Exhibit 1**).

After Plaintiff filed a notice of opposition, the JPML automatically stayed its conditional transfer order and issued a briefing schedule on whether this case should finally transfer to the MDL. JPML Dkt. No. 2120. Briefing concludes August 10, *see id.*, and McKesson anticipates that the JPML will make a final transfer decision shortly after its next hearing on September 27. *See Hearing Information*, http://www.jpml.uscourts.gov/hearing-information.

---

[2] Plaintiff alleges that "[t]he South Carolina Poisons, Drugs, and other Controlled Dangerous Substances Act, S.C. Code Ann. § 44-53-10, *et seq.*, incorporates 21 CFR § 1301.74(b) at S.C. Code Ann. § 44-53-340." Compl. ¶ 306. As explained below, *see infra* Part I.A., the provision that Plaintiff cites here does not incorporate 21 C.F.R. § 1301.74(b) and, even if South Carolina law incorporates federal law, such incorporation would support rather than undermine federal jurisdiction.

**ARGUMENT**

Given Plaintiff's reliance on duties arising under federal law, federal question jurisdiction is proper. Although Plaintiff purports to assert state law causes of actions, its claims are predicated on alleged violations of the CSA. Accordingly, those claims necessarily raise substantial federal issues that should be resolved in federal court.

**I.    PLAINTIFF'S COMPLAINT NECESSARILY RAISES DISPUTED AND SUBSTANTIAL ISSUES OF FEDERAL LAW.**

Federal district courts have removal jurisdiction over "any civil action brought in a State court of which the district courts of the United States have original jurisdiction," 28 U.S.C. § 1441(a), and original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331. "A single claim over which federal-question jurisdiction exists is sufficient to allow removal." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 194 (2d Cir. 2005); *see Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164-66 (1997).

Even where state law creates the plaintiff's causes of action, those claims may raise a federal question sufficient to warrant removal jurisdiction. Under the Supreme Court's *Grable* and *Gunn* decisions, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258; *see also Grable*, 545 U.S. at 315. "Where all four of these requirements are met … jurisdiction is proper because there is a serious federal interest in claiming the advantages thought to be inherent in a federal forum, which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn*, 568 U.S. at 258 (quotation marks omitted).

Courts have found these factors to be satisfied in cases where, as here, state law claims

5

are predicated on violations of federal statutes governing complex, nationwide regulatory schemes for which uniformity is essential. *See, e.g.*, *PNC Bank, N.A. v. PPL Elec. Util. Corp.*, 189 F. App'x 101, 104 n.3 (3d Cir. 2006) (state law claim based on violation of Internal Revenue Code "gives rise to federal-question jurisdiction" under *Grable*); *Broder*, 418 F.3d at 196 (state law claims premised on violations of Communication Act satisfy "*Grable* test for federal-question removal jurisdiction"); *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1031 (2d Cir. 2014) (state law claims premised on violations of Exchange Act "necessarily raise disputed issues of federal law"); *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, NA*, 824 F.3d 308, 315–18 (2d Cir. 2016) (state law claims based on violation of Internal Revenue Code satisfy *Grable*); *Ranck v. Mt. Hood Cable Regulatory Comm'n*, 2017 WL 1752954, at \*5 (D. Or. May 2, 2017) (state law claims based on violations of Cable Communications Policy Act satisfy *Grable*).

This case, too, satisfies all four elements of *Grable* and *Gunn*.

### A.    The Complaint "Necessarily Raises" Federal Issues.

An action "necessarily raises" a federal question when "the right to relief depends upon the construction or application of federal law." *PNC Bank*, 189 F. App'x at 104 n.3. Significantly, "an action under 28 U.S.C. § 1331(a) arises . . . *if the action requires construction of a federal statute*, or at least a distinctive policy of a federal statute requires the application of federal legal principles." *V.I. Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.*, 27 F.3d 911, 916 (3d Cir. 1994) (emphasis added); *see also Merrell Dow Pharms. v. Thompson*, 478 U.S. 804, 808-09 (1986) (federal question jurisdiction exists if "vindication of a right under state law *necessarily turn*[s] *on some construction of federal law*" (emphasis added, internal citation omitted)).

In determining whether state law claims turn on construction or application of federal

law, the Court's analysis "begin[s] by considering the duty underlying each claim." *NASDAQ*, 770 F.3d at 1020. "A state-law claim 'necessarily' raises federal questions where the claim is affirmatively 'premised' on a violation of federal law," *Jacobson*, 824 F.3d at 315, or where the "singular duty" underlying the claim arises under federal law, *NASDAQ*, 770 F.3d at 1021.

Here, Plaintiff's claims necessarily raise federal issues because they are premised on Distributors' alleged violations of legal duties (*i.e.*, to report and halt suspicious orders) that arise out of the CSA and related DEA regulations. *See* 21 C.F.R. § 1301.74(b) (setting forth reporting requirement); *Masters Pharm*, 861 F.3d at 212-13 (discussing shipping requirement). Despite its protestations to the contrary, Plaintiff's reliance on these federal duties is evident on the face of the Complaint. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) (federal jurisdiction exists when federal issue is presented "on the face of the plaintiff's properly pleaded complaint").

Plaintiff makes its reliance on federal law clear by citing federal statutes, regulations, and decisions throughout the Complaint to establish the duties to report and halt suspicious orders and repeatedly pleading that Distributors' alleged violations of these duties support Plaintiff's causes of action. *See, e.g.*, Compl. ¶ 307 ("Federal regulations … impose a non-delegable duty upon wholesale drug distributors to 'design and operate a system to disclose to the registrant suspicious orders of controlled substances.'"); *id.* ¶¶ 309, 322 n. 110, 338 (citing *Masters* as source of duty to "stop shipment" of suspicious orders); *id.* ¶¶ 306, 307, 308, 344, 532 (citing 21 C.F.R. § 1301.74(b) as source of duty to report suspicious orders).

As these and other citations demonstrate, Plaintiff's claims against Distributors rest squarely on its allegations that Distributors breached duties arising out of the CSA. Although a plaintiff "may avoid federal jurisdiction by *exclusive* reliance on state law," *Caterpillar*, 482

7

U.S. at 392 (emphasis added), Plaintiff's claims here have no such exclusive state law basis. Indeed, the Complaint fails to cite specific provisions of South Carolina law that independently require Distributors to report suspicious orders, and it does not identify state law authority that requires wholesale distributors halt or stop shipments of suspicious orders for controlled substances. To the contrary, Plaintiff relies on federal law in support of that duty. *See, e.g.*, ¶ 309 (citing only federal law to establish duty to halt shipment for suspicious orders).

Plaintiff's claim for negligence (Count IV) illustrates the point. As to Distributors, Plaintiff's sole theory of negligence is that Distributors "[f]ail[ed] to avoid filling suspicious orders that were ultimately diverted." Compl. ¶ 497. As noted, however, the alleged duty to halt or "avoid filling" shipments of suspicious orders arises solely under the federal CSA, and not under state law. Because federal law is the sole source of the duty upon which Plaintiff's negligence claim relies, Plaintiff's theory of liability necessarily raises a federal question. *See Benjamin v. S.C. Elec. & Gas Co.*, 2016 WL 3180100, at *5 (D.S.C. June 8, 2016) ("While Plaintiffs' allegations of negligence appear on their face to not reference federal law, federal issues are cognizable as the source for the duty of care resulting from [the defendant's conduct]."). In other words, "it is not logically possible for the plaintiffs to prevail on this cause of action without affirmatively answering the embedded question of whether federal law" required Distributors to halt suspicious orders under the circumstances. *R.I. Fishermen's All., Inc. v. R.I. Dep't Of Envtl. Mgmt.*, 585 F.3d 42, 49 (1st Cir. 2009). "That is enough to make out a federal question." *Id.*

Significantly, in its remand motion, Plaintiff does not dispute that its claims are predicated on allegations that Distributors breached duties arising under the CSA. To the contrary, Plaintiff doubles down on its invocation of federal law, asserting that "Plaintiff's

allegations in this case [are] that defendants breached standards of care *created by federal law*." Remand Mot. 12 (emphasis added).[3] Plaintiff cannot repeatedly allege violations of duties arising under federal law and then contend that it has not raised a federal question.

Ignoring this inconsistency, Plaintiff maintains, without support, that its Complaint does not necessarily raise federal issues because its "references to federal law are but one of many bases asserted by Plaintiff to establish its state law claims" and that it "asserts numerous bases for Defendants' violations of state law." Remand Mot. 12. The Complaint, however, fails to cite any state law provision that gives rise to the duties to report or halt shipments of suspicious orders for prescription opioids.

Although the Complaint alleges that "[t]he South Carolina Poisons, Drugs, and other Controlled Dangerous Substances Act, S.C. Code Ann. § 44-53-10, *et seq.*, incorporates 21 CFR § 1301.74(b), at S.C. Code Ann. § 44-53-340," Compl. ¶ 306, and 21 CFR § 1301.74(b) establishes the duty to report suspicious orders to DEA, that argument fails for two reasons.

First, the cited provision states only that "[p]ersons registered to manufacture, distribute, or dispense controlled substances under this article shall keep records and maintain inventories in conformance with the record-keeping and inventory requirements of Federal law and with any additional rules the Department issues." S.C. Code Ann. § 44-53-340. That provision says nothing about alleged requirements to identify or report suspicious orders of controlled substances or the alleged requirement to "refuse" or "avoid filling" suspicious orders of

---

[3] Plaintiff argues that "the federal statutes references in the Complaint" merely "help elucidate the standard of care Defendants must meet under state [common] law," Remand Mot. 10. The problem with that explanation is that Plaintiff cannot identify a preexisting, parallel common law duty to report or halt shipment of suspicious orders. Nor could it. The duty to report suspicious orders to DEA has never existed at common law—it is purely a creature of statute and regulation. If the duty were known at common law, it would be a simple matter for Plaintiff to cite a South Carolina case recognizing it, yet the remand motion cites none.

controlled substances.

Second, even if South Carolina law incorporated federal duties to report and halt suspicious orders, that would only reinforce federal jurisdiction. As one court explains, "incorporation of a federal law into the state statute on which the plaintiffs' cause of action is grounded" necessarily raises an "embedded federal question." *R.I. Fishermen's All.*, 585 F.3d at 49; *see also Gilmore v. Weatherford*, 694 F.3d 1160, 1173 (10th Cir. 2012) (state law conversion claim necessarily raises federal question where "Oklahoma personal property law includes and incorporates the federal requirement"); *Broder*, 418 F.3d at 195 (state law breach-of-contract contract claim necessarily raised federal issue where contract "incorporated by reference" provision of Communications Act); *NASDAQ*, 770 F.3d at 1022 (complaint necessarily raised federal question where contract "incorporate[d] NASDAQ's rules by reference, but NASDAQ's duties to promulgate those rules and then to adhere to them were dictated by federal law" (citations omitted)).

Moreover, even if Plaintiff could prove some of its claims against Distributors without establishing a violation of federal law (to be clear, it cannot), this Court still has federal-question jurisdiction because "[a] single claim over which federal-question jurisdiction exists is sufficient to allow removal" of the entire action. *Broder*, 418 F.3d at 194; *see Chicago*, 522 U.S. at 166 ("Nothing in the jurisdictional statutes suggests that the presence of related state law claims somehow alters the fact that [the] complaints, by virtue of their federal claims, were 'civil actions' within the federal courts' 'original jurisdiction.'"). Because at least some of Plaintiff's causes of action turn on a showing that Distributors violated the CSA, federal question jurisdiction exists.

Perhaps recognizing that it cannot succeed on its claims without invoking federal law,

Plaintiff attempts to distract from the weaknesses of its remand motion by citing unpublished, nonbinding, and, most importantly, inapposite district court decisions from opioid-related cases in other jurisdictions and asks this Court to blindly follow the conclusion that the claims in those cases did not give rise to federal-question jurisdiction. Remand Mot. 4 (citing *New Mexico v. Purdue Pharma L.P.*, No. 1:18-cv-00386-JCH-KBM, 2018 WL 2943246, at \*4–7 (D.N.M. June 12, 2018); *Delaware v. Purdue Pharma L.P.*, No. 1:18-383-RGA, 2018 WL 1942363, at \*2–5 (D. Del. Apr. 25, 2018); *West Virginia v. McKesson Corp.*, No. 2:17-cv-03555, slip op. (S.D. W.Va. Feb. 15, 2018); *West Virginia v. McKesson Corp.*, No. 16-1772, 2017 WL 357307, at \*4–9 (S.D. W.Va. Jan. 24, 2017)). These decisions do not alter the analysis here.

As an initial matter, all these cases involved actions brought by state attorneys general, not counties or municipalities. Thus, in those cases, unlike here, the state's choice of forum was an important consideration because federal courts are "reluctant to snatch cases which a *State* has brought from the courts of that State." *Franchise Tax Bd. of Calif. v. Constr. Laborers Vacation Trust for S. Calif.*, 463 U.S. 1, 21 n.22 (1983) (emphasis added).

Additionally, the analyses in these cases are not interchangeable as Plaintiffs suggest. All involved allegations of state law violations not present here. Unlike Plaintiff, the plaintiffs in those cases alleged that defendants had violated duties arising not only out of the federal CSA, but also the West Virginia Uniform Controlled Substances Act, Delaware Controlled Substances Act, and New Mexico Controlled Substances Act. And unlike Plaintiff here, plaintiffs in those cases cited to detailed state-law rules that bear on the same areas as the regulations promulgated under the federal CSA. *See, e.g.*, West Virginia, 2017 WL 357307, \*3 (discussing, among other things, W. Va. C.S.R. 15-2-4.4, requiring applicants to undertake suspicious order reporting obligations). By contrast, Plaintiff's claims here rely on alleged violations of duties arising only

from the federal CSA, not on parallel state requirements.

### B.     The Parties "Actually Dispute" the Federal Issues.

The federal issues raised by the Complaint are "actually disputed" because the parties contest whether the CSA and its implementing regulations in fact give rise to applicable duties to report and halt suspicious orders for prescription opioids, the precise scope and contours of any such duties under the CSA, and whether Distributors violated these alleged duties. Indeed, because Plaintiff's claims against Distributors depend on their theory that Distributors breached these duties, this issue is the "central point of dispute." *Gunn*, 568 U.S. at 259.

This dispute also presents a nearly pure question of law that requires an assessment of whether the challenged conduct falls within the scope of the CSA and any applicable duties arising under the CSA, *i.e.*, an examination of "the contours of [the] federal duty," "the scope of that duty," and "whether [Distributors' conduct] amounted to a breach of that duty." *NASDAQ*, 770 F.3d. at 1023. That analysis requires the Court to make a determination of, among other things, whether the CSA and its implementing regulations in fact give rise to the duties to report and halt suspicious orders, what any such duties entail, what constitutes a "suspicious" delivery under the CSA's implementing regulations, what actions should have been taken to resolve those suspicions or "halt" the shipment, and whether existing processes satisfy federal reporting guidelines.

Given these disputes about the applicability and scope of duties under the CSA, Plaintiff cannot credibly maintain, as it asserts in its remand motion, that the federal issue is not "actually disputed." Remand Mot. 12-13. Distributors deny that they violated duties under the CSA in the manner alleged in the Complaint and that duties under the CSA are as sweeping as Plaintiff alleges. Unless Plaintiff is willing to concede both points, the parties actually dispute the federal issue.

### C.     The Federal Issues Are "Substantial."

The Supreme Court has explained that "[t]he substantiality inquiry under *Grable* looks …
to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. A federal
issue "can be important for many reasons," including because (i) "state adjudication would
undermine the development of a uniform body of federal law"; (ii) "resolution of the issue has
broad significance for the federal government"; or (iii) "the case presents a nearly pure issue of
law that would have applications to other federal cases." *Bd. of Comm'rs of Se. La. Flood Prot.
Auth.-E. v. Tenn. Gas Pipeline Co.*, 850 F.3d 714, 724 (5th Cir. 2017). Exercising federal-
question jurisdiction in such cases "captures the commonsense notion that a federal court ought
to be able to hear claims recognized under state law that nonetheless turn on substantial
questions of federal law, and thus justify resort to the experience, solicitude, and hope of
uniformity that a federal forum offers on federal issues." *Grable*, 545 U.S. at 312.

The federal issues presented here are important to the federal system as a whole because
there is a federal interest in ensuring uniform interpretation of the CSA. The scope of the
obligations the CSA places on distributors of pharmaceuticals—e.g., whether and to what extent
it requires distributors to halt suspicious orders—is a legal question with broad significance to
the federal government, including by affecting the DEA's ability to enforce the CSA and
methods for enforcing it. Moreover, resolution of this legal issue will have application not only
in this case and the hundreds of opioid-related actions pending in the MDL, but in all cases in
which a plaintiff alleges that any distributor of pharmaceuticals breached its alleged duties to
report or halt shipments of suspicious orders.

### 1.     There is a federal interest in uniform interpretation of the CSA.

Courts often find federal issues to be substantial where they raise "questions [that]
involve aspects of … complex federal regulatory scheme[s] … as to which there is a serious

federal interest in claiming the advantages thought to be inherent in a federal forum." *Broder*, 418 F.3d at 195 (quotation marks omitted). Such rulings are especially common where, as here, federal agencies are responsible for implementing a national regulatory system for which uniformity is essential. In *NASDAQ*, for example, the Second Circuit ruled that "the disputed federal issue in th[e] case—whether [the defendant] violated its Exchange Act obligation" was "sufficiently significant to the development of a uniform body of federal securities regulation to satisfy the requirement of importance to the federal system as a whole." 770 F.3d at 1024. Likewise, in *Jacobson*, the Second Circuit held that "minimizing uncertainty over the tax treatment of mortgage-backed securities, as Congress intended, fully justif[ied] resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." 824 F.3d at 318.

Similarly, Plaintiff's claims would require a court to determine the scope of Distributors' duties under the CSA, implicating the uniformity concerns addressed above. In enacting the CSA, Congress stated that it was "providing the legitimate drug industry with a *unified* approach to narcotic and dangerous drug control." H.R. Rep. No. 91-1444 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4566, 4572 (emphasis added). Indeed, Plaintiff itself acknowledges Congress's intent to create a "unified approach" to regulation the distribution of controlled substances. *See* Compl. ¶ 310.

Plaintiff's claims thus "involve aspects of the complex federal regulatory scheme applicable to" the national prescription drug supply chain, *Broder*, 418 F.3d at 195, and are "sufficiently significant to the development of a uniform body of [controlled substances] regulation to satisfy the requirement of importance to the federal system as a whole," *NASDAQ*, 770 F.3d at 1024. Furthermore, "minimizing uncertainty over" reporting and shipping

obligations under the CSA "justifies resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Jacobson*, 824 F.3d at 317-18.

Resort to a federal forum is particularly warranted here because Plaintiff's action is but one of more than 1,000 cases pending in the MDL. If this case is allowed to proceed in federal court and transferred to the MDL, the MDL court will be able to ensure uniform construction and application of the CSA and any duties arising under the CSA, thus achieving Congress's goal of a "unified approach" to regulating controlled substances. If, on the other hand, this case were remanded to the state court, nothing would prevent that court from construing and applying federal CSA obligations in a manner inconsistent with the MDL court and with federal policy generally.

### 2.     The federal issues are significant to federal government.

The federal government has made clear how cases like this one will affect its ability to enforce the CSA. Most notably, the Department of Justice filed a Statement of Interest on behalf of the United States in the MDL, asserting the federal government's interests in, among other things, its "law enforcement and legal activities in conjunction … with the multidistrict litigation," specifically including "[c]riminal and civil tools available *under the* [*CSA*]." *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804 (N.D. Ohio Mar. 1, 2018), ECF No. 161, at 7 (attached as **Exhibit 2**) (emphasis added).

Allowing a state court to resolve claims premised on violations of the CSA—and to determine the scope of duties under the CSA—creates the potential for inconsistent interpretations across jurisdictions. *See* 21 U.S.C. § 903 (although Congress did not intend to "occupy the field" of controlled substances regulation with CSA, CSA pre-empts inconsistent state law). Conflicting interpretations of the CSA issued by state courts would inevitably

undermine the federal government's efforts to enforce the statute and sow confusion among federally regulated entities.

### 3.     The case presents nearly pure legal issues that apply to other cases.

This case would require a court to determine the existence of duties arising under the CSA, the scope and contour of any such duties that exist, and "whether [Distributors' conduct] amounted to a breach of that duty." *NASDAQ*, 770 F.3d. at 1023. These questions present "nearly pure issue[s] of law" that would necessarily "have applications to other federal cases." *Tenn. Gas Pipeline*, 850 F.3d at 724. Indeed, these issues apply to nearly all actions pending in the MDL.

### 4.     Substantiality does not require a federal cause of action.

Although Plaintiff correctly concedes that "there is no private right of action under the [CSA]," it incorrectly suggests that the lack of a federal cause of action nullifies federal jurisdiction. Remand Mot. 14. That argument is inconsistent with *Grable*. In *Grable*, the Supreme Court held that lack of a federal cause of action does *not* foreclose federal-question jurisdiction and found that the federal issue presented in that case was sufficiently substantial notwithstanding lack of a federal cause of action. *See Broder*, 418 F.3d at 196 ("The *Grable* Court found this last requirement to be satisfied even in the absence of a private right of action[.]").

Thus, the absence of a private right of action afforded by the CSA to Plaintiff does not diminish the substantiality of the federal questions here, particularly when federal courts have exclusive jurisdiction to enforce the CSA.

### D.     Federal Jurisdiction Will Not Disrupt the Congressionally-Approved Balance of Federal-State Judicial Responsibilities.

Finally, the federal issues presented by the Complaint are capable of resolution in federal court "without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at

258. Federal courts exclusively hear challenges to DEA authority to enforce the federal CSA against distributors.[4] Similarly, federal courts have exclusive jurisdiction over proceedings seeking to enjoin violations of the CSA. *See* 21 U.S.C. § 882(a) ("The district courts of the United States and all courts exercising general jurisdiction in the territories and possessions of the United States shall have jurisdiction in proceedings . . . to enjoin violations of this subchapter."). Thus, federal courts already are the exclusive forums for determining the permissible scope of restraints on Distributors under the federal CSA. These are precisely the issues raised by the Complaint, which notably seeks injunctive relief. *See* Compl., Prayer for Relief (seeking "injunction forcing Defendants to abate the opioid epidemic").

## II.     THERE IS NO NEED TO CONSIDER PLAINTIFF'S REMAND MOTION NOW, MUCH LESS TO EXPEDITE A RULING.

Although federal jurisdiction is proper here, the Court may and should defer ruling on Plaintiff's remand motion and thus deny Plaintiff's request for an expedited ruling. Deferring consideration of Plaintiff's remand motion until the JPML makes a final transfer decision will promote judicial efficiency and ensure consistent rulings by allowing the MDL court in the Northern District of Ohio to consider this and all other remand motions presenting similar federal question issues.

"[C]ourts have repeatedly noted that the 'general rule is for federal courts to defer ruling on pending motions to remand in MDL litigation until after the [JPML] has transferred the case,'" *Little v. Pfizer, Inc.*, 2014 WL 1569425, at *3 (N.D. Cal. Apr. 18, 2014), because

---

[4] *See, e.g.*, *PDK Labs. Inc. v. U.S. Drug Enf't Admin.*, 362 F.3d 786 (D.C. Cir. 2004) (challenge to DEA program enforcing CSA to prevent diversion of ephedrine); *Admin. Subpoena Walgreen Co. v. U.S. Drug Enf't Admin.*, 913 F. Supp. 2d 243 (E.D. Va. 2012) (resolving registrant's motion to require DEA to return subpoenaed documents); *Cardinal Health, Inc. v. Holder*, 846 F. Supp. 2d 203 (D.D.C. 2012) (challenge under Administrative Procedure Act to DEA order suspending registration of distribution facility).

deferring consideration of a remand motion promotes judicial economy. If the JPML transfers the case to the MDL, the MDL judge can rule on the remand motion in conjunction with all other remand motions presenting similar federal question issues, in addition to all other pretrial matters, thereby preserving judicial resources and ensuring consistent decisions. For these reasons, courts in this district routinely stay proceedings and defer consideration of remand motions in such circumstances. *See, e.g.*, *Johnson v. DePuy Orthopaedics, Inc.*, 2012 WL 4538642, at *3 (D.S.C. Oct. 1, 2012) (concluding that "case should be stayed pending transfer to MDL No. 2197" and "declin[ing] to rule on Plaintiff's Motion to Remand, leaving that decision to [the MDL judge], who has a number of other motions to remand before him where the [same] issue … has been raised"); *Murphy-Pittman v. DePuy Orthopaedics, Inc.*, 2012 WL 6588697, at *2 (D.S.C. Dec. 17, 2012) (same); *Felkel v. DePuy Orthopaedics, Inc.*, 2012 WL 3484837, at *3 (D.S.C. Aug. 15, 2012) (same).

Here, deferring consideration of Plaintiff's remand motion is especially appropriate because the jurisdictional issue presented in this case—*i.e.*, whether state law causes of action predicated on alleged breaches of duties arising solely under the CSA—has also arisen in other actions that the JPML has transferred or will soon transfer to the MDL. *See, e.g.*, *City of Paterson v. Purdue Pharma L.P.*, No. 2:17-cv-13433 (D.N.J.) (removed on federal question grounds and transferred to MDL); *Ne. Carpenters Funds v. Purdue Pharma L.P.*, No. 2:18-cv-09973 (D.N.J.) (same); *Newark v. Purdue Pharma L.P.*, No. 2:18-cv-10310 (D.N.J.) (same); *County of Hudson v. Purdue Pharma L.P.*, No. 2:18-cv-09029 (D.N.J.) (same); *N. Miss. Med. Ctr., Inc. v. McKesson Corp.*, No. 1:18-cv-00078 (N.D. Miss.) (same).

It bears emphasis that in other opioid-related actions against these defendants, other federal courts have already deferred consideration of remand motions presenting the same

federal question. For example, in *Paterson*, *Hudson County*, and *North Mississippi Medical Center*, McKesson removed actions to federal court on precisely the same grounds presented here (*i.e.*, that state law causes of action predicated on violations of the CSA raised substantial federal questions), and the removed actions were tagged for transfer to the MDL. *See Paterson*, No. 2:17-cv-13433, ECF No. 1; *Hudson County*, No. 2:18-cv-09029, ECF No. 1; *N. Miss. Med. Ctr.*, No. 1:18-cv-00078, ECF No. 1. In those actions, like here, the JPML conditionally transferred the cases to the MDL. In those actions, like here, the plaintiffs opposed transfer and moved to remand the cases to state court, while McKesson moved to stay proceedings pending a final transfer decision. *See Paterson*, No. 2:17-cv-13433, ECF Nos. 12, 20; *Hudson County*, No. 2:18-cv-09029, ECF Nos. 19, 21; *N. Miss. Med. Ctr.*, No. 1:18-cv-00078, ECF Nos. 7, 8. 14, 15. And in those actions, as it should proceed here, the federal courts declined to resolve the plaintiffs' remand motions and instead allowed the cases to transfer to the MDL. *See* JPML Dkt. No. 1134 (Apr. 2018 Transfer Order) (transferring *Paterson* to MDL) (attached as **Exhibit 3**); JPML Dkt. No. 2133 (Aug. 2018 Transfer Order) (transferring *Hudson County* and *North Mississippi Medical Center* to MDL) (attached as **Exhibit 4**).

This case is a replay of *Paterson*, *Hudson County*, and *North Mississippi Medical Center*, in all relevant respects, and the same result should therefore apply. Therefore, in the interests of promoting judicial economy and consistent rulings, this Court should defer ruling on Plaintiff's motion and instead allow the MDL court to address it along with the others.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion to remand and motion for expedited ruling should be denied

August 6, 2018                                   */s/ John T. Lay*_____
                                                 John T. Lay
                                                 Jordan M Crapps
                                                 GALLIVAN, WHITE & BOYD
                                                 PO Box 7368
                                                 Columbia, SC 29202
                                                 803 779-1833
                                                 jlay@GWBlawfirm.com
                                                 jcrapps@gwblawfirm.com

                                                 *Attorneys for McKesson Corporation*